UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| MICAH ROBINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:10 CV 63  PPS |
| | ) | |
| UNITED STATES STEEL CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Micah Robinson brought this action against his former employer, Defendant United States Steel Corp., for wrongful termination. U.S. Steel seeks dismissal of Robinson's Complaint under Federal Rule of Civil Procedure 12(b)(6). In the alternative, U.S. Steel wants summary judgment because Robinson's claims are preempted by the Labor Management Relations Act, and are thus untimely under the Act's six-month statute of limitations. [DE 6.] I advised Robinson that since both parties presented materials outside the pleadings, it was my intention to treat the present motion as one for summary judgment. I gave Robinson an opportunity to file additional materials if he believed it would be helpful. No additional materials were submitted and the matter is therefore now fully briefed. For the following reasons, U.S. Steel's Motion for Summary Judgment is granted.

## BACKGROUND

As usual, I'll start with the facts. Micah Robinson worked in the Iron Producing Division at U.S. Steel for over ten years. During that time, U.S. Steel had a collective bargaining agreement with the United Steelworkers Union of American, and Robinson was a member of the

union. The CBA governed the terms and conditions of employment for all bargaining unit employees. [*See* DE 7-2.]

Relevant here, the CBA states that U.S. Steel "retains the exclusive rights to manage the business and Plants and to direct the working forces," including "the right to hire, suspend or discharge for proper cause." [*Id*. at 105-06.] The agreement also contains a detailed grievance procedure by which union members can challenge decisions by U.S. Steel to suspend or discharge employees. According to the agreement, the grievance process is "the sole procedure" for processing any claim by an employee or the union for a collective bargaining agreement violation. [*Id*. at 9.] The agreement also states that "[n]o employee will be disciplined or discriminated against in any way solely for . . . reporting an accident in good faith." [*Id*. at 55.]

Robinson claims that his troubles at U.S. Steel began in 2005, when he was a member of the Joint Union Management Safety Team. [DE 1 ¶ 10.] During that time, an explosion occurred at one of U.S. Steel's blast furnaces. [*Id*.] After the explosion, Robinson reported an unsafe condition that apparently contributed to the explosion. [*Id*.] Robinson claims that the unsafe condition was an Indiana Occupational Safety and Health Administration ("IOSHA") violation, and he was required to report the incident in line with his obligations as both an employee and as a member of the Safety Team. [*Id*. ¶¶ 10-12.]

But apparently some of Robinson's co-workers didn't see it that way. Robinson asserts that other employees at U.S. Steel perceived him as a rat because his reporting of the unsafe condition led to the firing of a fellow employee. [*Id*. ¶ 10.] Robinson further claims that U.S. Steel permitted (indeed, encouraged) employees to retaliate against Robinson for filing the report, and U.S. Steel issued numerous suspensions for phony reasons. [*Id*.] According to

Robinson, one of these bogus suspensions ultimately led to his final termination.

Here's what Robinson claims happened: on December 13, 2007, Robinson had an altercation with another U.S. Steel employee at a local barbershop, off of U.S. Steel's premises. [*Id*. ¶ 5.] The altercation was reported to U.S. Steel, and, as a result, Robinson received 3 five-day suspensions. [*Id*. ¶ 8.] Because Robinson was already subject to a last chance agreement and the conduct allegedly involved inappropriate conduct towards a security officer, U.S. Steel exercised its rights and converted the 3 five-day suspensions into a discharge. [*See* DE 11 at 15 (Minutes of Second Step Meeting).] Although how exactly this transpired is a little murky, what is clear is that Robinson concedes that the 3 five-day suspensions "ultimately resulted in his termination from U.S. Steel." [*Id*. at 12 ¶ 3.] According to the Complaint, Robinson "exhausted his administrative remedies" through the grievance process and this resulted in his "final termination of employment [from] United States Steel Corporation on or about January 18, 2008." [DE 1 at 8.]

In his affidavit opposing summary judgment Robinson claims – contrary to what he said in his Complaint – that the January 18, 2008 grievance hearing was actually a "second step meeting" and his termination was not final on that date. [DE 11 at 12 ¶ 5.] The CBA has a tiered process for resolving employee grievances; decisions at a Step Two hearing can be appealed to Step Three, and then eventually appealed to arbitration. [DE 7-2 at 87-90.] Robinson claims in his affidavit that he thought his grievance was going on to a Step Three meeting, and then potentially to arbitration, and he asserts that he was told this by a union official. [DE 11 at 12 ¶ 6.] But no third step meeting or arbitration ever took place. [*Id*.]

As a result of his termination, and after hearing no news regarding his grievance for

almost two years, Robinson filed this action on December 11, 2009 in Lake Superior Court. In his Complaint, Robinson first claims that he was wrongfully terminated for the incident at the barbershop "in violation of the terms and conditions of the collective bargaining agreement in place at the time of [Robinson's] discharge from employment." [DE 1 ¶ 9.]

In addition, Robinson asserts that he was wrongfully terminated for reporting the unsafe condition, following the blast furnace explosion. Specifically, he states in Paragraph 12 that his termination was "retaliation for his good faith performance of his duties, legal responsibilities, and obligations as an employee, and a member of the Joint Union Management Safety Team in 2005 and part of 2006, by reporting an unsafe condition that was an IOSHA violation" and so U.S. Steel "committed an intentional, wrongful act." [*Id*. ¶ 12.] He goes on in Paragraph 13 to claim that by terminating him in retaliation for reporting the unsafe condition, U.S. Steel "violated the terms and conditions of the collective labor bargaining agreement." [*Id*. ¶ 13.]

U.S. Steel timely removed the action to this Court pursuant to 28 U.S.C. § 1331, because the Complaint stated a cause of action under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), by alleging that U.S. Steel violated the terms and conditions of the CBA. [DE 2.] Shortly thereafter, U.S. Steel filed the present motion.

## **DISCUSSION**

There are two issues that need to be decided: whether Robinson's claims are preempted by the LMRA, and if so, whether the claims were timely filed under the LMRA's six-month statute of limitations. U.S. Steel argues that Robinson's claims are preempted by the LMRA because both depend on interpretation of the collective bargaining agreement. As a result, Robinson's Complaint is untimely because it was filed well outside of the LMRA's six-month

statute of limitations. Robinson responds by arguing that his wrongful termination claim for reporting the IOSHA violation is not preempted by the LMRA. In any event, he claims that a material question of fact exists as to whether the limitations period was equitably tolled and when the six-month clock began.

Under Federal Rule of Civil Procedure 12(d), when a defendant's Rule 12(b)(6) motion presents matters outside the pleadings, the court may either exclude the matters outside the pleadings or convert the motion to one for summary judgment under Rule 56, so long as "[a]ll parties [are] given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Here, U.S. Steel seeks dismissal under Rule 12(b)(6), or in the alternative, summary judgment under Rule 56(c). As noted above, both parties presented evidence outside the pleadings in briefing the motion. Indeed, Robinson explicitly treated U.S. Steel's motion as one for summary judgment by submitting an affidavit and then arguing that genuine issues of material fact preclude summary judgment. *See Robinson v. Oatman*, 1999 WL 98338, at *2 (N.D. Ill. Feb. 19, 1999) (finding plaintiff was properly notified that Rule 12(b)(6) motion was being converted to motion for summary judgment where "Plaintiff himself pointed out that matters outside the complaint had been presented to the court and himself proceeded as on summary judgment by submitting outside affidavits and documents.").

Nonetheless, out of an abundance of caution, I notified Robinson that I was treating U.S. Steel's motion as one for summary judgment under Rule 56(c), and I gave him 14-days to submit additional evidence to support his argument that summary judgment is not proper. *See Matter of Wade,* 969 F.2d 241, 249 (7th Cir. 1992). He presented no new evidence and requested no additional time to discover facts to support his opposition. *See* Fed. R. Civ. P. 56(f). As a result,

I am treating this motion as one for summary judgment under Rule 56(c).

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment carries the initial burden of demonstrating an absence of evidence to support the position of the non-moving party. *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). The non-moving party must then set forth specific facts showing that there is a genuine issue of material fact and that the moving party is not entitled to a judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). A genuine dispute about a material fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id*. at 248. In making this determination, I must draw every reasonable inference from the record in the light most favorable to the non-moving party. *Haefling v. United Parcel Serv.*, *Inc.,* 169 F.3d 494, 497 (7th Cir. 1999).

**Robinson's Claims are Preempted by the LMRA**

Under Section 301 of the LMRA, when someone has a beef about potential violations of a CBA, those disputes come to federal court. 29 U.S.C. § 185(a). Congress believed that it was best to develop a comprehensive body of federal labor law that would govern the interpretation of CBAs. *See Textile Workers v. Lincoln Mills*, 353 U.S. 448, 451 (1957). As a result, Section 301 preempts state law claims that involve alleged breaches of a CBA. *In re Bentz Metal Products Co. Inc.*, 253 F.3d 283, 286 (7th Cir. 2001). To allow state law actions for alleged violations of collective bargaining agreements could frustrate the Congressional goal of providing an orderly and consistent handling of labor disputes. *Lingle v. Norge Div. of Magic*

*Chef, Inc.*, 486 U.S. 399, 404 n.3 (1988).  Notably, this "does not prevent states from providing workers with substantive rights independent of the collective bargaining relationship." *Nelson v. Central Illinois Light Co.*, 878 F.2d 198, 201 (7th Cir. 1989).  A state law cause of action is preempted by the LRMA only if the claim requires interpretation of a collective bargaining agreement.  *Lingle*, 486 U.S. at 407; *see also Bentz*, 253 F.3d at 285 ("a state law claim is not preempted if it does not require interpretation of the CBA").

It is clear (and the parties seem to agree) that Robinson's first claim is preempted by the LMRA.  Robinson alleges in his Complaint that his termination for the incident at the barbershop "was in violation of the terms and conditions of the collective bargaining agreement in place at the time of [Robinson's] discharge from employment."  [DE 1 ¶ 9.]  This allegation is a direct challenge to the CBA.  *See Bentz*, 253 F.3d at 286 ("[I]t is well-understood that a claim for breach of a collective bargaining agreement is preempted."); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394-95 (1987) ("Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement.") (internal quotations omitted).  And, at the very least, this claim requires analysis and interpretation of the "just cause" provision and the grievance procedures for challenging employment decisions.  The first claim is thus preempted.

Robinson asserts, however, that his "second claim" is not governed by the LMRA.  [DE 11 at 4.]  Robinson seems to argue that his second claim is an Indiana tort claim for retaliatory discharge for reporting an IOSHA violation.  Beginning in paragraph 10 of his Complaint, Robinson explains that as member of the Joint Union Management Safety Team he reported an unsafe condition, which was the cause of a blast furnace explosion.  [DE 1 ¶ 10.]  He alleges that

as a result of his report, U.S. Steel retaliated against him by "issuing numerous suspensions for fictitious reasons" (including the barbershop incident), ultimately leading to his wrongful termination. [*Id*.] In paragraph 12, Robinson claims that by retaliating against him, U.S. Steel "committed an intentional, wrongful act." [*Id*. ¶ 12.] But he doesn't stop there. Robinson goes on to explicitly state in paragraph 13 that these actions "violated the terms and conditions of the collective labor bargaining agreement between the Plaintiff and the Defendant in place at the time of wrongful termination." [*Id*. ¶ 13.]

Because the allegation in paragraph 13 forthrightly asserts a violation of the CBA, the first question is whether Robinson's "second claim" includes paragraph 13. From the face of the Complaint, paragraphs 12 and 13 could potentially be read as two separate claims – one for state law retaliatory discharge and the other for violating the CBA. The only difference between the two paragraphs is that, in paragraph 12, Robinson claims U.S. Steel "committed an intentional, willful act," while in paragraph 13, it "violated the terms and conditions of the collective labor bargaining agreement." A plaintiff may allege a state law cause of action *and* a claim for violation of the CBA, even though both claims arise under the same facts. *Lingle*, 486 U.S. at 409-10. Robinson does not delineate these allegations through separate counts, but he doesn't have to. *Fox v. Ghosh*, 2010 WL 345899, at *2 (N.D. Ill. Jan. 26, 2010); *see Hatmaker v. Memorial Med. Ctr.*, --- F.3d ---, 2010 WL 3385191, at *1 (7th Cir. Aug. 30, 2010) ("[P]laintiffs in federal courts are not required to plead legal theories.").

But Robinson forgoes this argument – he specifically notes that his "second claim . . . is addressed in paragraphs 10 through the end of [the] complaint," which ends in paragraph 16. [DE 11 at 4; *see* DE 1 at 4.] The language in paragraph 13 is thus clearly part of his "second

claim." So by alleging that U.S. Steel's retaliatory actions "violated the terms and conditions of the collective labor bargaining agreement," Robinson makes it clear that he is basing his claim, not on any state law cause of action, but on a direct violation of the CBA. And the CBA has a specific provision which says that "[n]o employee will be disciplined or discriminated against in any way solely for . . . reporting an accident in good faith." [DE 7-2 at 55.] Thus, Robinson's claim that he was fired in retaliation for reporting a safety violation requires an interpretation of the CBA. Resolution of his claim would also require analysis and interpretation of the "just cause" provision and the provision stating that the grievance process is "the sole procedure" for processing a collective bargaining agreement violation. [*Id*. at 9, 105-06.] Consequently, Robinson's second claim is also preempted by the LMRA. *See Bentz*, 253 F.3d at 286.

This discussion is largely academic in any event. This is because, even if I assume that paragraph 13 is not part of Robinson's "second claim," and paragraph 12 is a separate action under an Indiana retaliatory discharge theory, the claim cannot proceed. Robinson alleges that U.S. Steel "committed an intentional, wrongful act" by discharging him in retaliation for reporting an IOSHA violation. Here's the problem: Indiana does not recognize a tort for retaliatory discharge for filing an IOSHA violation. *See Groce v. Eli Lilly & Co.*, 193 F.3d 496, 503-04 (7th Cir. 1999) (under Indiana law, the plaintiff "has no common law-based cause of action" for retaliatory discharge for reporting an IOSHA violation). Instead, a plaintiff with such a claim must pursue the remedies provided by the IOSHA statute. *Id*.; *see* Ind. Code § 22-8-1.1-38.1 (stating that employee must file a complaint or institute a proceeding within 30 days of the incident so the Commissioner can investigate the matter and potentially refer it to the Attorney General for suit). And, if Robinson filed a complaint or proceeding with IOSHA in response to

the alleged retaliation, that complaint is not at issue here. So even if Robinson's "second claim" is not preempted by the LMRA, the claim cannot go forward.

**Robinson's Claims Fall Outside the LMRA's Six-Month Statute of Limitations**

The next question is whether these claims were timely filed. The LMRA contains no statute of limitations for Section 301 claims. But employee challenges to the finality of a collective bargaining agreement's grievance process are subject to a six-month statute of limitations. *DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 169-70 (1983) (six-month statute of limitations for hybrid 301 claims borrowed from Section 10(b) of National Labor Relations Act). "[A] Section 301 cause of action accrues from the time a final decision on a plaintiff's grievance has been made or from the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, that no further action would be taken on his grievance." *Chapple v. National Starch & Chemical Co. and Oil*, 178 F.3d 501, 505 (7th Cir. 1999). When the relevant facts are undisputed, the date a cause of action accrues is generally a question of law. *Horn v. A.O. Smith Corp.*, 50 F.3d 1365, 1369 (7th Cir. 1995); *see Edwards v. Int'l Union, United Plant Guard Workers of Am.*, 46 F.3d 1047, 1050 (10th Cir. 1995) (finding same under LMRA).

The parties agree that the six-month statute of limitations is applicable here[1]; however,

---

[1] Section 301 suits are generally described as either "straightforward" or "hybrid" actions. A straightforward claim is a breach of contract claim generally brought by the union, which does not involve issues related to the grievance process. *See Int'l Union, United Automobile Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696 (1966). Straightforward claims are subject to state law statute of limitations. Hybrid claims, however, comprise of two causes of action, one against the employer for breach of the collective bargaining agreement and one against the union for breaching its duty of fair representation. *DelCostello*, 462 U.S. at 163-64. The employee need not sue both defendants, though he must prove both parties breached their duties. *Id*. The purpose is to give finality to grievance or arbitration procedures established by

-10-

Robinson claims that equity requires a tolling of the limitations period. The doctrine of equitable tolling allows a plaintiff to avoid the limitations period "if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Chapple*, 178 F.3d at 505-06. A plaintiff must prove that he "exercised continuous diligence" and brought suit as soon as possible. *Id*. at 506. The limitations period is not tolled "if a reasonable person in the plaintiff's position would have been aware within the limitations period of the possibility that its rights have been violated." *Id*. The Seventh Circuit is clear that equitable tolling should be exercised "'only sparingly,' and not in cases where the claimant failed to exercise due diligence in preserving his legal rights." *Id*.

Equitable tolling does not save Robinson's claims. Indeed, Robinson presents *no evidence* showing that he diligently brought the suit as soon as practicable. *See id*. at 506 (no equitable tolling where "the plaintiffs point to no record evidence on which a jury could reasonably base a finding that they pursued vital information concerning the claim but were unable to file it in a timely manner."). The record is bare as to what Robinson did to determine the status of his grievance.

Nonetheless, Robinson claims there is a genuine issue of fact as to when the statute of limitations began. In his affidavit, Robinson states that following his 3 five-day suspensions, he filed a grievance with the union. [DE 11 at 12 ¶ 4.] Then, on January 18, 2008, his grievance was denied at a "second step meeting." [*Id*. at 12 ¶ 5.] He asserts that it was his "understanding that this matter was to go to arbitration and was told the same by . . . a union official." [*Id*. at 12

---

the collective bargaining agreement. *Id*. This is also the rationale, in part, for the six-month statute of limitations. *Id*. Here, the parties do not dispute (and correctly so) that the six-month statute of limitations applies. [*See* DE 7 at 5; DE 11 at 3.]

[¶ 6.]  But no third step meeting or arbitration ever took place.  Robinson claims he was awaiting word (presumably from the union) regarding the outcome of the third step meeting or arbitration before filing suit.  Apparently fed up with waiting, he filed his action within Indiana's two-year statute of limitations.  [*Id*. at 13 ¶ 7.]

But Robinson's affidavit is belied by his Complaint.  Robinson alleges in his Complaint that he "exhausted his administrative remedies" on January 18, 2008, resulting in his "final termination of employment."  [DE 1 ¶ 8.]  So when Robinson filed his Complaint, he believed that the grievance process was complete and his termination finalized on January 18, 2008.  As a result, I look askance at Robinson's after-the-fact affidavit, in which he claims he was waiting on a third step meeting or arbitration before filing suit (almost two years after the second step meeting).  *See Hughes v. Vanderbilt University*, 215 F.3d 543, 549 (6th Cir. 2000) ("Plaintiffs are bound by admissions in their pleadings, and a party cannot create a factual issue by subsequently filing a conflicting affidavit.").  The Complaint makes it clear that Robinson believed the statute of limitations began on January 18, 2008.

In any event, even if Robinson did believe that a third step meeting or arbitration was pending, he still waited too long to bring suit.  According to the collective bargaining agreement, the union must appeal a Step Two decision to Step Three within five days of receipt of the Step Two minutes.  [DE 7-2 at 89.]  Then, the union representative must meet with U.S. Steel within 15 days, U.S. Steel has five days to rule on the grievance, and, if the grievance is denied, the union has ten days to appeal the grievance to arbitration.  [*Id*. at 89-90.]  If the union does not meet these deadlines, the grievance is considered withdrawn.  [*Id*. at 92.]  So even if he thought his grievance was being appealed after the January 18, 2008 second step hearing, by the end of

February 2008, Robinson should have known one way or another the status of his appeal – his grievance would have been withdrawn, denied, or proceeding to arbitration. Because he took no steps to ascertain the status of his grievance, Robinson failed to exercise reasonable diligence in determining when his cause of action accrued. *Chapple*, 178 F.3d at 505-06.

Indeed, based on the record before me, it appears there was no third step meeting or arbitration, and Robinson's termination was final on January 18, 2008. [*See* DE 11 at 12 ¶ 6 (Robinson Affidavit).] If Robinson had exercised reasonable diligence, he would have known this. Thus, because he filed his Complaint on December 13, 2009, almost two-years after his termination, Robinson commenced the action well outside of the LMRA's six-month statute of limitations, and his claims are dismissed as untimely.

## CONCLUSION

For the foregoing reasons, U.S. Steel's Motion to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) or in the Alternative, Pursuant to Fed. R. Civ. P. 56 is **GRANTED**. [DE 6.] The case is **DISMISSED**.

**SO ORDERED**.

ENTERED: September 27, 2010.

                                                    s/ Philip P. Simon
                                                    PHILIP P. SIMON, CHIEF JUDGE
                                                    UNITED STATES DISTRICT COURT